## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAWN HAMPTON,** | : | **CIVIL NO. 1:15-CV-898** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN E. WETZEL,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Plaintiff Shawn Hampton ("Hampton"), an inmate currently confined at the Rockview State Correctional Institution in Bellefonte, Pennsylvania ("SCI-Rockview"), commenced this action on May 8, 2015 pursuant to 42 U.S.C. § 1983. (Doc. 1).  Named as defendants are John Wetzel, Secretary of the Department of Corrections ("DOC"), John/Jane Doe, Chief Hearing Examiner of the DOC[1], and the following employees of SCI-Rockview: Steven Glunt, Superintendent; Tim Miller, Classification Correctional Program Manager; William Williams, Correctional Health Care Administrator; Ryan Eby, Correctional Principal; Scott Ellensberg, Hearing Examiner; Deborah Young, Library Assistant; Christopher Moore, Correctional Officer; and, James Pringle, Correctional Officer, (hereinafter "Commonwealth defendants").  (Doc. 1, at 1-2).  Also named as defendants are Kristin Bernard and Julie Koltay, physician assistants at SCI-Rockview.  (<u>Id.</u> at 1).

---

[1] As discussed herein, this defendant is potentially subject to dismissal pursuant to Federal Rule of Civil Procedure 4(m).

Before the court is a partial motion (Doc. 19) to dismiss pursuant to Federal Rule of Civil Procedure 12(b), or for summary judgment pursuant to Federal Rule of Civil Procedure 56, by the Commonwealth defendants, and a motion (Doc. 16) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) by defendants Bernard and Koltay.  For the reasons set forth below, the court will grant in part and deny in part both motions.

## I.      Motion to Dismiss Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the

face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. <u>See</u> <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. <u>Id.</u>; <u>see</u> <u>also</u> <u>Fowler v.</u> <u>UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." <u>Iqbal</u>, 556 U.S. at 679 (citing <u>Twombly</u>, 550 U.S. at 556); <u>Twombly</u>, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.

## II.   <u>Allegations of the Complaint</u>

Hampton alleges that he had a disagreement with a fellow inmate library worker regarding a prison policy that required library workers to collect inmates' identification cards when they used the law computers. (Doc. 1, § III, A, ¶ 3). An argument ensued between the two inmates, and the library worker allegedly struck Hampton in the face. (Doc. 1, § III, A, ¶ 9). Hampton alleges that defendant Pringle failed to protect him from harm, and subsequently issued a false misconduct against Hampton to cover-up his failure to protect. (Doc. 1, § III, A, ¶ 10; § III, D, ¶¶ 5, 21).

Hearing examiner Ellensberg conducted a hearing on the misconduct charge. (Doc. 1, § III, D, ¶¶ 5-9). Hampton alleges that defendants Eby, Young, and Moore informed Ellensberg that Hampton initiated the fight in the library. (Doc. 1, § III, A, ¶ 11; § III, D, ¶ 5). Hampton maintains that he did not engage in a fight and he never hit another inmate. (Doc. 1, § III, A, ¶ 12). Defendant Ellensberg ultimately found Hampton guilty of fighting and disobeying an order. (Doc. 1, § III, D, ¶ 7). Hampton appealed the hearing examiner's decision. (Doc. 1, § III, D, ¶¶ 10-12). At their respective levels of review, the Program Review Committee and Superintendent Glunt each denied Hampton's appeals. (Id.)

As a result of this incident, Hampton was sent to the restricted housing unit ("RHU"), and he suffered from migraines and pain in his face. (Doc. 1, § III, A, ¶ 13-15; § III, D, ¶ 22). Upon release from the RHU, Hampton requested Excedrin for his migraines. (Doc. 1, § III, A, ¶ 19). His request was denied because he was already receiving pain medication. (Id.) Hampton explains that a prison doctor prescribed extra strength Tylenol for his back pain, which provided some relief for his migraine pain. (Doc. 1, § III, D, ¶ 27).

Subsequent to the library incident, Hampton alleges that he was continually harassed by defendants Pringle and Moore. (Doc. 1, § III, D, ¶¶ 1-3). He alleges that they filed false misconducts against him in retaliation for filing grievances against "the defendants". (Doc. 1, § III, D, ¶¶ 1, 4).

On an unspecified date, Hampton was temporarily transferred to the Camp Hill State Correctional Institution ("SCI-Camp Hill") pursuant to a writ. (Doc. 1, §

4

III, B, ¶ 1).  While housed at SCI-Camp Hill, Hampton's psychiatric medications were changed to accommodate him during Ramadan, and his asthma inhalers were purportedly changed without his knowledge.  (Doc. 1, § III, B, ¶¶ 2, 3, 4, 6). Hampton informed defendant Bernard of the change in medication.  (Doc. 1, § III, B, ¶ 6).  Defendant Bernard could not explain the medication change, but she nevertheless reordered Hampton's inhalers.  (Id.)  Hampton further alleges that defendant Bernard unexpectedly discontinued his pain medication and instructed him to purchase the medication from the commissary.  (Doc. 1, § III, B, ¶ 7). Hampton informed defendant Bernard that he could not afford medication through the commissary.  (Doc. 1, § III, B, ¶¶ 8, 10).  Hampton further claims that defendant Koltay similarly denied his request for medication and instructed him to purchase his medication from the commissary.  (Doc. 1, § III, B, ¶ 11).  Due to his inability to purchase and obtain medication from the commissary, Hampton alleges that he suffered from pain and severe migraines, and was unable to get out of bed, resulting in missed meals and call-outs.  (Doc. 1, § III, B, ¶¶ 15, 16; § D, ¶ 23).

Hampton next alleges that he was discriminated against based on his mental disability.  (Doc. 1, § III, C, ¶ 1, 2).  He asserts that his rights were violated due to a prison policy that does not permit mentally unstable individuals to possess medication.  (Doc. 1, § III, C(i), ¶¶ 1-3).  He claims that other "sane" individuals are allowed to keep medication in their cells.  (Doc. 1, § III, C, ¶ 2; § C(i), ¶ 3).  Since Hampton could not keep medication on his person, he was required to obtain medication from the medical window.  (Doc. 1, § III, C(i), ¶ 7).  Hampton was able to

visit the medication window four times per day.  (Doc. 1, § III, C(i), ¶ 8).  The

frequency of this medication distribution allegedly provided Hampton relief during

the day, but provided no relief at night.  (Doc. 1, § III, C(ii), ¶ 6).

**III.**   <u>**Discussion**</u>

Section 1983 of Title 42 of the United States Code offers private citizens a

cause of action for violations of federal law by state officials.  <u>See</u> 42 U.S.C. § 1983.

The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or
> the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured
> in an action at law, suit in equity, or other proper
> proceeding for redress. . . .

<u>Id.</u>; <u>see</u> <u>also</u> <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 284-85 (2002); <u>Kneipp v. Tedder</u>, 95

F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege

"the violation of a right secured by the Constitution and laws of the United States,

and must show that the alleged deprivation was committed by a person acting

under color of state law."  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

### A.      Commonwealth Defendants' Motion to Dismiss

The Commonwealth defendants seek partial dismissal of the complaint based on Hampton's failure to raise all but one claim in the prison's administrative review process prior to proceeding in federal court.[2]  Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions.  See 42 U.S.C. § 1997e(a); Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2000).  This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  It has been made clear that the exhaustion requirement is mandatory.  See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth v. Churner, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d

---

[2]      In Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004), the United States Court of Appeals for the Third Circuit addressed the issue of whether the defendants in Spruill properly identified their motion as one for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court noted that "[g]iven that the exhaustion issue turns on the indisputably authentic documents related to Spruill's grievances, we hold that we may also consider these without converting it to a motion for summary judgment."  Id. at 223 (citing Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1212 (10th Cir. 2003)).  See also Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) ("In appropriate cases, failure to exhaust may be raised as the basis for a motion to dismiss"); Ray v. Kertes, 285 F.3d 287, 293 n.5 (3d Cir. 2002) (motions to dismiss may be pursued on failure to exhaust grounds in certain circumstances).  In the case at bar, the court similarly concludes that the records submitted by the Commonwealth defendants in support of their motion to dismiss are indisputably authentic records which may be considered without converting the instant motion to a Rule 56 motion.

Cir. 2000) (same).  "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." Nyhuis, 204 F.3d at 73 (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules.  Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004).  The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements.  Spruill, 372 F.3d at 227-32; see also Nyhuis, 204 F.3d at 77-78.  A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. Spruill, 372 F.3d at 227-32; see also Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000).

The Pennsylvania Department of Corrections Inmate Grievance System Policy consists of a three-step Inmate Grievance System to provide inmates with an avenue to seek review of problems that may arise during the course of confinement. Pursuant to DC-ADM 804, after an attempt to resolve any problems informally, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review.  This must occur within fifteen days after the events upon which the claims are based.  "The text of the grievance must be legible, understandable, and presented in a courteous manner.  The inmate must include a statement of the facts relevant to the claim.  The statement of facts shall include the date, approximate time and location of the event(s) that gave rise to the grievance.  The inmate shall identify individuals directly involved in the event(s)."  DC-ADM 804, § 1 (A)(11). Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate

may then appeal to the Facility Manager of the institution.  Thereafter, within

fifteen days of an adverse decision by the Facility Manager, an inmate may file a

final appeal to the Secretary's Office of Inmate Grievances and Appeals.  An appeal

to final review cannot be completed unless an inmate complies with all established

procedures.  An inmate must exhaust all three levels of review and comply with all

procedural requirements of the grievance review process in order to fully exhaust

an issue.  See Booth, 206 F.3d at 293 n. 2 (outlining Pennsylvania's grievance review

process); Ingram v. SCI Camp Hill, 448 F. App'x 275, 279 (3d Cir. 2011) (same).

"As for the failure to [] identify named defendants on the grievance form,  . . .

to the extent the identity of a defendant was 'a fact relevant to the claim,'

Pennsylvania's prison grievance policy mandated that the identification be included

in the inmate's statement of facts on the grievance form.  And, . . . in the absence of

any justifiable excuse, a Pennsylvania inmate's failure to properly identify a

defendant constituted a failure to properly exhaust his administrative remedies

under the PLRA."  Williams v. Pennsylvania Dep't. of Corr., 146 F. App'x 554, 557

(3d Cir. 2005) (non-precedential).[3]

The Commonwealth defendants seek partial dismissal of the complaint based

on Hampton's failure to properly exhaust the available administrative review

procedures.  The Commonwealth defendants concede that Hampton fully

exhausted his claim against defendants Young and Eby relative to the incident in

the law library on July 15, 2014.  They argue that other grievances filed against

_____

[3] Although the Williams decision is non-precedential, it is highly persuasive
as a "paradigm of the legal analysis [the court] should ... follow."  Drinker v.
Colonial Sch. Dist., 78 F.3d 859, 864 n. 12 (3d Cir. 1996).

Young and Eby bear no relationship to the allegations in the instant complaint. Likewise, the grievances that name defendants Williams and Miller do not relate to the allegations in the instant complaint. As to defendants Wetzel, Glunt, Ellensberg, Moore, and Pringle, the Commonwealth defendants assert that Hampton failed to name these defendants in any of the fully exhausted grievances. (Doc. 25, at 9-11).

In response, Hampton acknowledges that he failed to comply with the exhaustion requirement as to certain claims prior to instituting the instant action. (Doc. 26, at 2-3). Hampton argues that he could not exhaust his administrative remedies with respect to all claims, other than the law library incident, since the claims relate to a misconduct report issued against him which he asserts was not grievable. He states that he "was only allowed to grieve the issue of inmates having to turn their IDs over to other inmates to use library resources… Plaintiff could only exhaust his misconduct and the grievance concerning the turning over of IDs to other inmates. All other claims would have been denied/dismissed". (Id. at 3). Hampton thus requests that the court excuse his noncompliance with the administrative remedy program.

In essence, Hampton claims that his present allegations stem from the incident in the law library and the resultant false misconduct, and that he was precluded from exhausting his administrative remedies because he could not grieve a misconduct. The court finds no merit to Hampton's argument that, because he could not grieve a misconduct, this rendered as futile his attempt to grieve his claims against defendants. See Spencer v. Zimmerman, 2008 WL 2994227, at *4

(M.D. Pa. July 31, 2008) (court rejected inmate's argument that he was prohibited from grieving his retaliation claim based on false misconduct); <u>Bartelli v. Fedak</u>, 2006 WL 1008996 (M.D. Pa. April 13, 2006) (inmate must exhaust his retaliatory false misconduct claim against prison staff).  Hampton's claims are not dependent on the misconduct issued against him and he was required to fully exhaust his claims against defendants.  Other than the law library incident, Hampton failed to properly submit grievances concerning the defendants' alleged conduct which forms the basis of his present claims before he filed the instant action.

The Commonwealth defendants submitted a declaration of Helen Shambaugh, grievance officer in the Secretary's Office of Grievances and Appeals of the Pennsylvania DOC, wherein she declares that Hampton fully exhausted nine grievances in the two years prior to the filing of the instant action.  (Doc. 25-1, Ex. A, Declaration of Helen Shambaugh ("Shambaugh Decl."), ¶¶ 1, 8).  Of those nine grievances, only one relates to the subject matter of Hampton's complaint, namely the incident in the law library at SCI-Rockview on July 15, 2014.  (Doc. 25-1, Ex. 8).  Although defendants assert that this grievance only names Young and Eby, a review of grievance number 518696 reveals that Wetzel and Glunt are named in the Appeal to Final Review.  (Doc. 25-1, Ex. 8).  It is quite possible that Hampton did not name Wetzel and Glunt in the initial review because he had not yet known of their purposed involvement in his claim.  Once Hampton became aware of their involvement, he was required to name them in the appeals process, which is precisely what he did.

The remaining eight grievances name only defendants Young, Eby, Williams, and Miller, and do not relate to the allegations in the instant complaint. (Doc. 25-1, Exs. 2-10). None of those grievances name defendants Ellensberg, Moore, or Pringle.

As noted above, the standard used in determining whether a prisoner has exhausted the administrative process is whether he complied with the applicable grievance procedures and rules. The relevant policy and the pertinent language states that "[t]he inmate shall identify individuals directly involved in the event(s)." DC-ADM 804, § 1(A)(11). The purpose of the regulation "is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing." <u>Spruill</u>, 372 F.3d at 234. Hampton failed to utilize the DOC's Inmate Grievance System with respect to defendants Ellensberg, Moore, and Pringle. Moreover, the grievances that name defendants Williams and Miller do not relate to the instant allegations. The court finds that the only properly exhausted claim relates to the incident in the law library against defendants Young, Eby, Wetzel, and Glunt. Consequently, the

Commonwealth defendants' partial motion to dismiss will be granted in part and denied in part.[4]

### B.   Bernard and Koltay's Motion to Dismiss

1.   <u>Eighth Amendment Deliberate Indifference to Medical Needs</u>

The Eighth Amendment's proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  <u>See</u> <u>Estelle</u>, 429 U.S. at 103-05.  In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." <u>Natale v. Camden Cty. Correctional Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003) (citing <u>Rouse</u>, 182 F.3d at 197).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." <u>Monmouth Cty. Corr. Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature

---

[4] A district court "should freely give leave [to amend] when justice requires."  FED. R. CIV. P. 15(a)(2).  "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be freely given." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (interpreting Federal Rules of Civil Procedure).  An amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted.  <u>In re NAHC, Inc. Securities Litig.</u>, 306 F.3d 1314, 1332 (3d Cir. 2002).  Hampton cannot overcome the failure to exhaust administrative remedies; therefore, leave to amend would be futile.

contemplated by the eighth amendment." Id. (citation omitted).  A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment.  See Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); see also McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981).

Hampton alleges that defendants Bernard and Koltay were deliberately indifferent to his serious medical needs when they refused to order Excedrin for his migraines; changed his asthma medication; and, discontinued his prescription for pain medication and, instead, advised him to purchase this medication through commissary.  (Doc. 1).  These claims will be addressed seriatim.

a.  Refusal to Order Excedrin

Hampton alleges that he "requested Excedrin for the migraines but since Plaintiff was already receiving pain meds that was partial[ly] helping …, defendant Bernard left them as they were" [sic].  (Doc. 1, § A, ¶ 19).  Hampton acknowledges that he was taking pain medication, however he asserts that this medication was not completely effective.  While Hampton may disagree with the efficacy of the treatment provided to him, it does not arise to a constitutional violation.  Inmates of

Alleghany County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979).  Hampton may not demand a particular type of treatment, as long as some treatment is provided. Hampton's allegations amount to nothing more than his subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison.  Disagreements as to the proper course of medical treatment will not satisfy the deliberate indifference standard.  Monmouth Cnty. Corr. Institutional Inmates, 834 F.2d at 346.  Moreover, courts will not second guess whether a particular course of treatment is adequate or proper.  Parham v. Johnson, 126 F.3d 454, 458 n.7 (3d Cir. 1997).  Based on the foregoing, Hampton fails to articulate an arguable civil rights claim regarding the alleged refusal to prescribe Excedrin.

b. *Change of Asthma Inhalers*

Hampton next claims that his asthma inhalers were improperly changed without his knowledge when he was temporarily housed at SCI-Camp Hill.  (Doc. 1, § B, ¶¶ 1, 3).  Hampton does not allege that any of the named defendants were personally involved in the change of his asthma inhalers, or were even aware of the change until he informed defendant Bernard.  In response, defendant Bernard "could not explain the change but none-the-less re-ordered Plaintiff's inhalers." (Doc. 1, § B, ¶ 6).

Defendants Bernard and Koltay assert that they were not personally involved in changing Hampton's asthma inhalers.  (Doc. 17, at 8-9).  Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior."  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting

Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode, 845 F.2d at 1207-08; see also, Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003).  Such allegations, however, must be made with appropriate particularity in that a complaint must allege specific conduct, time, place, and person responsible.  Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08.  Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement.  Rode, 845 F.2d at 1208.  Reviewing the allegations of the complaint, the court concludes that defendants Bernard and Koltay are entitled to dismissal of this claim because they had no personal involvement in the alleged change in Hampton's asthma inhalers.

### c.  Discontinuation of Pain Medication

Hampton alleges that although a prison doctor prescribed him pain medication[5], defendants Bernard and Koltay refused to provide the medication, stating that Hampton could purchase medication from the commissary.  (Doc. 1, § B, ¶¶ 7-11).  Hampton claims that he cannot afford to purchase medication from the commissary.  (Doc. 1, § B, ¶ 8).

Deliberate indifference may be evidenced by intentional refusal to provide care, denial of reasonable requests for treatment that result in suffering or risk of

---

[5] The complaint is not entirely clear as to the type of pain medication prescribed by the prior doctor, i.e., prescription pain medication or an over the counter pain reliever.

injury, or intentional interference with prescribed treatment.  Estelle, 429 U.S. at

104; Farmer, 511 U.S. at 837.  For purposes of the instant motion to dismiss,

Hampton has met this standard with regard to the medical defendants'

discontinuation of his prescription for pain medication.  Hampton alleges that he

suffered from severe migraines and pain, and a prison doctor prescribed pain

medication.  (Doc. 1, § B, ¶¶ 8, 15).  At some point thereafter, defendant Bernard

purportedly discontinued the prescription and instructed Hampton to purchase the

medication from the commissary.  (Doc. 1, § B, ¶ 7).  Hampton alleges that

defendant Koltay similarly denied him medication for his ailments.  (Doc. 1, § B, ¶¶

11, 12).  Hampton plausibly alleges that defendants Bernard and Koltay had specific

knowledge of his need for pain medication, and refused to provide him the

medication by discontinuing his prescription.

### 2.    Fourteenth Amendment Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that a

state may not "deny to any person within its jurisdiction the equal protection of the

laws," which is essentially a direction that all persons similarly situated should be

treated alike.  U.S. CONST., amend. XIV; City of Cleburne v. Cleburne Living Ctr.,

473 U.S. 432, 439 (1985) (citing Plyer v. Doe, 457 U.S. 202, 216 (1982)).  Classifications

involving suspect or quasi-suspect class, or impacting certain fundamental

constitutional rights, are subject to heightened or "strict" scrutiny. City of Cleburne,

473 U.S. at 439.

An equal protection claim can also be brought by a "class of one," a plaintiff

alleging that he has been "intentionally treated differently from others similarly

situated and that there is no rational basis for the difference in treatment." <u>Vill. of</u>
<u>Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000); <u>Williams v. Morton</u>, 343 F.3d 212, 221
(3d Cir. 2003); <u>see</u> <u>also</u> <u>Jean-Pierre v. Bureau of Prisons</u>, 497 F. App'x 164, 168 (3d
Cir. 2012).   If a distinction between persons does not implicate a suspect or quasi-
suspect class, state action will be upheld if it is rationally related to a legitimate
state interest.   <u>See</u> <u>Tillman v. Lebanon County Corr. Facility</u>, 221 F.3d 410, 423 (3d
Cir. 2000).   Proof of disparate impact alone, however, is not sufficient to succeed on
an equal protection claim; a plaintiff also must prove that the defendant intended to
discriminate.   <u>See</u> <u>Vill. of Arlington Heights v. Metro. Housing Dev. Corp.</u>, 429 U.S.
252, 264-66 (1977); <u>Washington v. Davis</u>, 426 U.S. 229, 242, 244-45 (1976).   Thus,
discriminatory intent must be a motivating factor in the decision, even though it
need not be the sole motivating factor.   <u>See</u> <u>Vill. of Arlington Heights</u>, 429 U.S. at
265-66.   Moreover, to prove a lack of rational basis, a plaintiff must negate every
conceivable rational basis for his differential treatment. <u>See</u> <u>Bd. of Trustees v.</u>
<u>Garrett</u>, 531 U.S. 356, 367 (2001); <u>Ramsgate Court Townhome Ass'n v. West Chester</u>
<u>Borough</u>, 313 F.3d 157, 160 (3d Cir. 2002).

Hampton generally claims that defendants violated his Fourteenth
Amendment rights due to his "disabilities" and he is excluded from "certain rights,
privileges, and activities afford[ed] to others and sane individuals."  (Doc. 1, § C ¶¶
1, 2).  He alleges that his rights were violated due to a prison policy that does not
permit mentally unstable individuals to possess medication.  (Doc. 1, § III, C(i), ¶¶
1-3).  Hampton has failed to allege any facts from which it can be concluded that

defendants Bernard and Koltay engaged in intentional or purposeful

discrimination.  Moreover, Hampton does not establish that defendants Bernard

and Koltay, physician assistants, had any role in the establishment and

maintenance of a policy, practice or custom that resulted in differential treatment of

Hampton.  Consequently, the Equal Protection claim against defendants Bernard

and Koltay will be dismissed.

3.    <u>First Amendment Retaliation Claim</u>

The First Amendment offers protection for a wide variety of expressive

activities.  <u>See</u> U.S. Const. amend I.  These rights are lessened, but not extinguished

in the prison context, where legitimate penological interests must be considered in

assessing the constitutionality of official conduct.  <u>See</u> <u>Turner v. Safley</u>, 482 U.S. 78,

89 (1987).  Retaliation for expressive activities can infringe upon an individual's

rights under the First Amendment.  <u>See</u> <u>Allah v. Seiverling</u>, 229 F.3d 220, 224-25 (3d

Cir. 2000).  To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must

demonstrate (1) that he was engaged in protected activity; (2) that he suffered an

"adverse action" by government officials; and (3) that there is "a causal link

between the exercise of his constitutional rights and the adverse action taken

against him."  <u>Rauser v. Horn</u>, 241 F.3d 330 (3d Cir. 2001) (quoting <u>Allah</u>, 229 F.3d at

225).  The last <u>Rauser</u> prong requires a prisoner to establish a causal link between

the exercise of his constitutional rights and the adverse action taken against him.

The court employs a burden-shifting regime to determine whether a causal link

exists.  The prisoner bears the initial burden of proving that his constitutionally

protected conduct was a substantial or motivating factor in the decision to

discipline him or retaliate against him.  See id. (citing Mount Healthy City Sch. Dist.

Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  The burden then shifts to the

defendants to prove by a preponderance of the evidence that they would have taken

the same disciplinary action even in the absence of the protected activity.  See id.  If

defendants prove that they would have made the same decision absent the

protected conduct for reasons reasonably related to a legitimate penological

interest, they will prevail in the retaliation action.  See id. at 334.

Hampton claims that he was retaliated against in violation of the First

Amendment for filing grievances regarding the incident in the law library.  (Doc. 1,

§ D).  He does not allege that defendants Bernard and Koltay's medical decisions

were designed in retaliation for Hampton engaging in a protected right.  The only

allegations related to defendants Bernard and Koltay in the retaliation count of the

complaint are as follows:

> 25.  Plaintiff has tr[i]ed the "Non-Aspirin X-Strength 500
> mg" pills offered on commissary for His migraines
> because The PAs, with approval from defendant Williams,
> RN[], and Glunt, refused to order or give Him anything[]
> even th[]ough Plaintiff had no funds.
>
> 26.  Plaintiff some days find[s] Himself taking two or three
> pills at one time, which could cause Him future damage to
> His kidneys.
>
> 27.  Plaintiff was prescribed extra strength Tylenol for His
> back pain by the Doctor, it just so happened that it
> worked for the migraines as well.

(Doc. 1, § D, ¶¶ 25-27).

Hampton does not assert that he filed grievances against defendants Bernard and Koltay. Additionally, he does not allege that he was engaging in any other constitutionally protected activity, prompting any retaliatory conduct by defendants Bernard and Koltay. Thus, the first prong of <u>Rauser</u>, i.e., that the plaintiff be engaged in a constitutionally protected activity, has not been satisfied. Defendants Bernard and Koltay are entitled to dismissal of the retaliation claim against them.

## IV.   __Federal Rule of Civil Procedure 4(m)__

Federal Rule of Civil Procedure 4(m) provides as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

Defendant John/Jane Doe, Chief Hearing Examiner of the DOC has never been properly identified or served in this case, nor has an attorney enter an appearance on his or her behalf. This defendant was named in the original complaint filed on May 8, 2015. Nearly a year has passed since such time, and it appears that Hampton has abandoned the action against this defendant. As a result, in accordance with Rule 4(m), the court will direct Hampton to show cause within twenty (20) days why said defendant should not be dismissed from this action. <u>See</u> <u>Mei Ying Liu v. Oriental Buffet</u>, 134 F. App'x 544, 546-47 (3d Cir. 2005) (non-precedential) (holding that under Federal Rule 4(m), "prior notice is required irrespective of whether the plaintiff is prejudiced by the dismissal").

21

**V.**     **Conclusion**

For the reasons set forth above, the Commonwealth defendants' partial

motion (Doc. 19) to dismiss will be granted in part and denied in part.  The motion

(Doc. 16) to dismiss by defendants Bernard and Koltay will be granted in part and

denied in part.

An appropriate order will issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        March 21, 2016