# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAWN HAMPTON,** | : | **CIVIL NO. 1:15-CV-898** |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| v. | : | |
| **JOHN E. WETZEL**, *et al.*, | : | |
| **Defendants** | : | |

## **MEMORANDUM**

Plaintiff Shawn Hampton ("Hampton"), an inmate currently confined at the Rockview State Correctional Institution in Bellefonte, Pennsylvania ("SCI-Rockview"), commenced this action pursuant to 42 U.S.C. § 1983. In the complaint, Hampton alleges that he had a disagreement with a fellow inmate library worker regarding a prison policy that required library workers to collect inmates' identification cards when they used the law computers. (Doc. 1, § III, A, ¶ 3). An argument ensued between the two inmates, and the inmate library worker allegedly struck Hampton in the face. (Id. at ¶ 9). Hampton contends that defendants failed to protect him from the assault in the library. (Id.)

The remaining defendants are the following employees of the Pennsylvania Department of Corrections ("DOC"): John Wetzel, Steven Glunt, Ryan Eby, and Deborah Young. Presently pending before the court is a motion for summary judgment filed by the remaining named defendants. (Doc. 63). For the reasons provided herein, the court will grant the motion for summary judgment.

I.   **Legal Standard**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(a). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); see also FED. R. CIV. P. 56(a), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F.Supp.2d at 315.

II.  **Statement of Material Facts**

At all times relevant to Hampton's complaint, defendant Wetzel was Secretary of the DOC, defendant Glunt was the Superintendent at SCI-Rockview, defendant Eby was the Correctional Principal at SCI-Rockview, and defendant Young was the Librarian Assistant at SCI-Rockview. (Doc. 65, Statement of Material Facts, ¶¶ 2-5; Doc. 72, Counterstatement of Material Facts, ¶¶ 2-5).

The DOC Code of Ethics provides that "[n]o employee shall permit an inmate to be in control or exercise authority over other inmates." (Id. at ¶ 6; Doc. 65-2 at 7, DOC Code of Ethics, § B ¶ 30). The law library at SCI-Rockview employs inmates who work in various capacities, including clerks. (Doc. 65 ¶ 7; Doc. 72 ¶ 7). The law library at SCI-Rockview has certain computers that inmates may use to work on legal filings. (Id. at ¶ 8). The legal research computers are used on a first-come, first-served basis. (Id. at ¶ 9).

At the time of the law library incident, there was an unwritten practice that inmates were to follow in order to use the computers in the law library. (Id. at ¶ 10). Hampton contends that defendant Young enforced this practice at the authorization of defendant Eby. (Id.) Pursuant to this unwritten practice, an inmate was required to hand in their identification card to a worker before using the computer. (Id. at ¶ 11). The practice of collecting inmate identification cards to use legal research computers is no longer in place. (Id. at ¶ 13). During the incident in question, Hampton did not follow this practice and did not turn in his identification card to an inmate library worker. (Id. at ¶ 12).

On June 4, 2014, Hampton went to the law library while defendant Young was working. (Id. at ¶ 14). Hampton told defendant Young that he was going to use a computer and handed his identification card to her. (Id. at ¶ 15). While using the computer, an inmate library worker, identified by Hampton as Saladine, began speaking to Hampton. (Id. at ¶ 16). Hampton does not know Saladine's real name. (Id. at ¶ 17). There was confusion regarding whether Hampton had permission to

3

use the computer.  (Id. at ¶ 18).  The Commonwealth defendants contend that the confusion stemmed from the fact that Hampton did not hand in his inmate identification card to a library worker, as the unwritten practice required.  (Id. at ¶ 18).  Hampton contends that he did not feel comfortable handing his identification card to another inmate.  (Doc. 72 ¶¶ 18, 19).

The Commonwealth defendants assert that Hampton and Saladine began verbally arguing over the confusion.  (Doc. 65 ¶ 20).  Hampton contends that he attempted to explain his reasons for failing to hand in the identification card.  (Doc. 72 ¶ 20).  Defendant Young heard the arguing and immediately called for a corrections officer.  (Doc. 65 ¶ 21; Doc. 72 ¶ 21).  A corrections officer entered the library to assess the situation.  (Id. at ¶ 22).  The corrections officer began escorting Saladine from the library.  (Id. at ¶ 23).  As they walked by Hampton, Saladine punched Hampton in the face.  (Id. at ¶ 24). The record reflects that neither defendant Eby nor defendant Glunt was in the law library.  (Id. at ¶¶ 25, 26).

Hampton and Saladine were housed on the same cell block.  (Id. at ¶ 27). Hampton knew Saladine because they practiced the same religion and greeted each other when their paths crossed.  (Id. at ¶ 28).  The previous conversations between Hampton and Saladine were not hostile.  (Id. at ¶ 29).  Hampton had no confrontations or problems with Saladine prior to the law library incident.  (Id. at ¶ 30).

### III. Discussion

#### A. Eighth Amendment Claim

"The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners against the 'unnecessary and wanton infliction of pain" and "impose[s] a duty upon prison officials to take reasonable measures 'to protect prisoners from violence at the hands of other prisoners.'" Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994); Whitley v. Albers, 475 U.S. 312, 319, (1986)). "In order for a plaintiff to prove a constitutional violation in a failure-to-protect case, a claimant must demonstrate that: (1) he is 'incarcerated under conditions posing a substantial risk of serious harm;' and (2) the prison officials acted with 'deliberate indifference to his health and safety.'" Ogden v. Mifflin County, 2008 WL 4601931, *3 (M.D. Pa. 2008) (citing Farmer, 511 U.S. at 834).

Hampton claims that the Commonwealth defendants failed to protect him from an assault by an inmate in the law library. The Commonwealth defendants assert that there is no evidence that they were actually aware of an excessive risk or were deliberately indifferent to the risk that the inmate might assault Hampton.

##### 1. *Substantial Risk of Serious Harm*

Under the substantial risk prong of the inquiry, the court must conduct an objective analysis. See Farmer, 511 U.S. at 834; Hamilton, 117 F.3d at 746. Thus, the inquiry ordinarily will not be satisfied by evidence of a single incident or isolated incidents. See Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir.1985). An objectively substantial risk of harm, however, may be "established by much less

5

than proof of a reign of violence and terror." Id. (quoting Shrader v. White, 761 F.2d 975, 978 (4th Cir. 1985)).

The court finds that Hampton failed to produce sufficient evidence that he was incarcerated under conditions posing a substantial risk of serious harm. To the contrary, until the incident in question, the parties agree that Hampton did not have any confrontations or problems with inmate Saladine. The evidence clearly shows that the assault of June 4, 2014 was an unexpected and isolated incident, clearly insufficient to establish constitutional liability. See Riley, 777 F.2d at 147 (noting that an isolated incident is insufficient evidence to establish an Eighth Amendment violation); see also Williams v. Brown, 2007 WL 2079935, at *3 (D.N.J. July 17, 2007) (finding that an inmate-on-inmate assault was "an isolated attack" when the aggressor inmate had never been in any fights with other prisoners and had no history of violence within the prison system).

### 2. *Deliberate Indifference*

In cases of prisoner incarceration, Eighth Amendment liability attaches only to the "unnecessary and wanton infliction of pain." Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (quoting Whitley, 475 U.S. at 319). Thus, not only must a prisoner's conditions of incarceration be sufficiently serious, but prison officials must possess a "sufficiently culpable state of mind" in allowing such a condition to persist. Beers-Capital v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001). Under this prong, the court must analyze whether prison officials were, from a subjective standpoint, deliberately indifferent to an inmate's health or safety. Farmer, 511 U.S. at 834. Specifically, the court must determine whether an official

consciously knew of and disregarded an excessive risk to the prisoner's wellbeing. Farmer, 511 U.S. at 839-44; Hamilton, 117 F.3d at 747. It is not enough to show that the prison official was "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists." Farmer, 511 U.S. at 837. Rather, the prison official "must also draw the inference." Id. The official's actual knowledge may be proved by circumstantial evidence. Beers-Capital, 256 F.3d at 131.

In numerous nonprecedential[1] cases involving an inmate-on-inmate attack, the Third Circuit has routinely found that, under the standards of a failure to protect claim, prison officials were not aware of a serious risk where there were no previous incidents of violence between the inmates, even if officials had notice of threats or potential for violence prior to the attack. See Bizzell v. Tennis, 449 F. App'x 112 (3d Cir. 2011) (affirming grant of summary judgment to defendants as to plaintiff's failure to protect claim because lack of prior fighting between the two inmates involved, even though plaintiff had informed officers that his cellmate was "crazy," does not indicate that defendants were aware of a serious risk); Blackstone v. Thompson, 568 F. App'x 82 (3d Cir. 2014) (affirming summary judgment because the inmate failed to show that corrections officers both knew of and were deliberately indifferent to an excessive risk to his safety, where there were no longstanding, pervasive, well-documented or previously noted tensions between prisoner and his cellmate); Carter v. Lawler, 446 F. App'x 420 (3d Cir. 2011)

---

[1] The court acknowledges that nonprecedential decisions are not binding upon federal district courts. Citations to nonprecedential decisions herein reflect that the court has considered the panel's ratio decidendi and is persuaded by same.

7

(corrections officers were not deliberately indifferent to excessive risk of harm to prisoner, because officers had no prior knowledge or warning that the prisoner would be involved in an altercation with the other inmate). Furthermore, even in cases where there was a direct threat against an inmate by a fellow inmate, the Third Circuit has found insufficient evidence that the corrections officers were deliberately indifferent to a substantial risk. See Freeman v. Miller, 615 F. App'x 72 (3d Cir. 2015) (summary judgment was proper in finding that corrections officers were not deliberately indifferent when they issued a disciplinary warning to prisoner after said prisoner told them he would stab his cellmate, but the officers took no further action to prevent the eventual attack that occurred).

The record before the court reflects that Hampton did not have any prior altercations or confrontations with Saladine, and there is no indication that Saladine had a propensity for assaulting other inmates. Both parties concede that there were no previous threats of violence against Hampton by Saladine leading up to the incident in question, nor did the two men ever engage in fighting, or report fears of violence against each other. (Doc. 65 ¶ 30; Doc. 72 ¶ 30; Doc. 65-1 at 33, Declaration of Shawn Hampton, 32:20-22). The undisputed evidence reflects that Hampton never alerted any of the Commonwealth defendants about any trouble he had with inmate Saladine. Hampton has not submitted any evidence that the Commonwealth defendants were actually aware of a "substantial risk of serious harm" to his health or safety. See Wise v. Ranck, 340 F. App'x 765, 766-67 (3d Cir. 2009) (affirming the district court's grant of summary judgment in favor of defendants where the plaintiff alleged that he "did not get along" with his cellmate,

who "had a year-long history of 'antisocial territorial issue[s]'" but did not have a history of violence or attacking cellmates, and finding that this evidence fell "well short of knowing that [plaintiff] faced a substantial risk of serious physical harm at the hands of his cellmate"). Furthermore, there is no evidence of any longstanding, pervasive, or well-documented tensions between Hampton and Saladine. See Counterman v. Warren Cty. Corr. Facility, 176 F. App'x 234, 238 (3d Cir. 2006) ("[a]ctual knowledge can be proven circumstantially [only] where the general danger was obvious; that is, where 'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past.'") (quoting Farmer, 511 U.S. at 842-43). The court thus finds that the summary judgment record is void of any evidence that establishes that the Commonwealth defendants were deliberately indifferent to Hampton's safety. Accordingly, the remaining Commonwealth defendants will be granted summary judgment on the Eighth Amendment claim against them.

### 3. *Lack of Personal Involvement of Defendant Wetzel*

Defendant Wetzel also seeks an entry of judgment in his favor on all claims based on Hampton's failure to establish sufficient personal involvement in the alleged wrongful conduct. (Doc. 64 at 9-10). Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal

involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207-08; see also Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.

Hampton has wholly failed to establish that defendant Wetzel was personally involved in the altercation in the law library. To the extent that Wetzel is sued based on his supervisory role as Secretory of the DOC, this claim fails. Any attempt by Hampton to hold Wetzel liable for the actions of his subordinates is essentially an assertion of *respondeat superior* liability which seeks to hold this defendant liable based on his supervisory role. This ground of constitutional liability has been squarely rejected by the courts. See Rode, 845 F.2d at 1207. Consequently, defendant Wetzel is entitled to judgment in his favor based on lack of personal involvement.

**B.     Alleged Violation of Prison Policy**

Hampton asserts liability based on the Commonwealth defendants' violation of a prison policy. Specifically, Hampton claims that the Commonwealth defendants utilized an "abusive policy" in the law library. He contends that the unwritten practice of requiring inmates to hand in their identification cards to other

inmates in order to use the law computers violates the DOC Code of Ethics. The DOC Code of Ethics prohibits an inmate to be in control of, or exercise authority over another inmate. The Commonwealth defendants assert that the act of handing over an identification card does not transfer power or authority to the inmate holding the card. Thus, the Commonwealth defendants argue that this unwritten practice does not violate the DOC Code of Ethics.

A violation of an internal prison policy does not automatically rise to the level of a constitutional violation. "[A] prison policy manual does not have the force of law and does not rise to the level of a constitutional violation." Atwell v. Lavan, 557 F.Supp.2d 532, 556, n. 24 (M.D. Pa. 2008) (citing Mercy Catholic Med. Ctr. v. Thompson, 380 F.3d 142, 154 (3d Cir. 2004)). The Third Circuit has clearly stated that "agency interpretive guidelines 'do not rise to the level of a regulation and do not have the effect of law.'" Mercy Catholic Med. Ctr., 380 F.3d at 155 (citation omitted). Moreover, plaintiff has failed to demonstrate any causal connection between the unwritten practice and the completely unanticipated assault at issue. Assuming arguendo that the unwritten practice violated an internal prison policy, the Commonwealth defendants cannot be liable solely for that violation, and the motion will be granted in this regard.[2] See Estrella v. Hogsten, 2007 WL 2065879

---

[2] In his brief in opposition to the Commonwealth defendants' motion for summary judgment, Hampton raises, for the first time, a claim under Monell v. Dep't of Social Services of the City of New York, 436 U.S. 658 (1978) and a "state-created" danger claim. (Doc. 73). As a general rule, courts may decline to consider arguments raised for the first time in an opposition brief. See Anspach v. City of Philadelphia, 503 F.3d 256, 259 n.1 (3d Cir. 2007) (observing that absent compelling circumstances, "failure to raise an argument in one's opening brief waives it"). The court considers these claims waived.

(M.D. Pa. 2007) (holding that mere failure of prison officials to follow their own regulations alone is not a constitutional violation).

## IV. Conclusion

For the reasons set forth above, the court will grant the remaining Commonwealth defendants' motion for summary judgment. An appropriate order will issue.

        /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: February 14, 2019